(December 2, 1922.)

## S. GROVER RICH et al., Plaintiffs, v. B. S. VARIAN, Respondent.

[210 Pac. 1011.]

GRAND JURY—QUORUM—INDICTMENT—ABSENCE OF JUDGE DURING SITTINGS OF GRAND JURY—CHANGE OF JUROR.

1. While the law requires a grand jury to consist of sixteen persons, it also provides that twelve jurors shall constitute a quorum.

2. *Held,* that the introduction of a new juror after indictments had been found and before they had been reported to the court was not prejudicial to any right of defendants.

3. The district court may be in recess during the sessions of a grand jury without invalidating indictments found, but the practice of holding a term of court in another county during such sessions is to be condemned.

---

Publisher's Note.

Number of jurors necessary to form a quorum of grand jury, see notes in Ann. Cas. 1912C, 30; Ann. Cas. 1918A, 106; 27 L. R. A. 783, 846.

Original proceedings on application for Writ of Prohibition. *Denied.*

S. T. Lowe and Peterson & Coffin, for Plaintiffs.

"Where a term of court for each county in the district begins on a specified day, the duration of the term is ended by the arrival of the day fixed for the beginning of the term in another county, unless there are statutes authorizing sessions of the same court to be held in different counties at the same time, or authorizing the adjournment or postponement of the term in session beyond the time fixed for holding court in another county." (15 C. J., p. 881; *McVay v. State,* 104 Ark. 629, 150 S. W. 125; *Central Coal & Coke Co. v. Graham,* 129 Ark. 550, 196 S. W. 940; *Roberts & Schafer Co. v. Jones,* 82 Ark. 188, 101 S. W. 165; *Houghton v. Order of United Commercial Travelers,* 108 S. C. 73, 93 S. E. 393.)

Roy L. Black, Attorney General, Dean Driscoll, First Asst., and T. M. Morris, for Respondent.

A suspension or adjournment of court without a definite order adjourning to a day certain does not terminate the term. (15 C. J. 881, 883; *Ex parte Harrell,* 57 Or. 95, 110 Pac. 493; *Tucker v. State,* 10 Okl. Cr. 569, 139 Pac. 998; *Commonwealth v. Bannon,* 97 Mass. 214; *Terr. v. Armija* (N. M.), 89 Pac. 267; *Terr. v. Barela,* 15 N. M. 520, 110 Pac. 845; *Brown v. State,* 11 Okl. Cr. 498, 148 Pac. 181; *Jones v. McClaughry,* 169 Iowa, 281, 151 N. W. 210; *Bidwell v. Love,* 22 Okl. 549, 98 Pac. 425; *Stirling v. Wagner,* 4 Wyo. 5, 31 Pac. 1032; *Carland v. Custer County,* 5 Mont. 579, 6 Pac. 24.)

The absence of the judge and the adjournment of court pending the sessions of the grand jury did not affect the indictments. (*People ex rel. Pickard v. Sheriff,* 11 N. Y. Civ. Proc. 172; *Nealon v. People,* 39 Ill. App. 481; 28 C. J. 763, sec. 3; 796, sec. 82.)

The discharge of a juror after finding an indictment and before its return, and the substitution of another, did not

vitiate the indictment. (*Commonwealth v. Burton,* 4 Leigh (Va.), 645, 26 Am. Dec. 337; note, 27 L. R. A. 780; 28 C. J. 787, sec. 61.)

A loss in membership subsequent to the impaneling, whether by death, sickness or otherwise, so long as a sufficient number remains to return an indictment, is sufficient. (*People v. Roberts,* 6 Cal. 214; *People v. Butler,* 8 Cal. 435; *People v. Hunter,* 54 Cal. 65; *People v. Simmons,* 119 Cal. 1, 50 Pac. 844; *State v. Miller,* 3 Ala. 343; *Beasley v. People,* 89 Ill. 571; *State v. Brainerd,* 56 Vt. 532, 48 Am. Rep. 818; *State v. Conners,* 233 Mo. 348, Ann. Cas. 1912C, 28, 135 S. W. 444.)

The sheriff's mistake in summoning 25 jurors on open venire instead of 20, as ordered by the court, and summoning them for April 2d instead of April 3d, when they appeared in court on the 3d, did not affect the indictment. (*State v. Roberts,* 33 Ida. 30, 188 Pac. 895; 28 C. J. 773, 781; *State v. Cambron,* 20 S. D. 282, 105 N. W. 241; *Parus v. District Court,* 174 Pac. 706; *Sharp v. United States,* 13 Okl. 522, 76 Pac. 177; *State v. Witt,* 33 Or. 594, 55 Pac. 1053.)

DUNN, J.—On April 27, 1922, indictments were filed in the district court of the eleventh judicial district for Cassia county charging petitioners with certain felonies under the banking laws of this state, and petitioners have applied to this court for a writ of prohibition commanding Honorable B. S. Varian, the district judge presiding in said county at the time of the return of said indictments, to desist and refrain from any further proceedings under said indictments. Petitioners in their brief filed in this court present the following four points upon which they rest their claim to the relief sought, but discuss only the first, second and fourth:

1. The grand jury was not legally constituted because the Cassia county court was not in session;

2. The grand jury was not legally constituted because of the substitution on April 26th of Alfred Crane for Emil J. Henzel;

3. The grand jury was not legally constituted because of the failure of the officers of the court to comply with the order of the court for the summoning of twenty good and lawful citizens to appear in court on April 3, 1922, and the change by the clerk and sheriff of the court of said order to twenty-five good and lawful citizens to appear on April 2, 1922; and

4. Prohibition is the proper remedy in the matter.

Petitioners rest their contention that the grand jury was not regularly constituted because the Cassia county court was not in session upon the following facts: In December, 1921, the judges of the eleventh judicial district made an order fixing the terms of court in said district for the year 1922 as follows:

Twin Falls County: January 9th, February 20th, April 10th, May 15th, September 11th, November 11th;

Cassia County: February 20th, May 15th, November 13th; Minidoka County: March 20th, September 11th; Jerome County: April 3d, October 9th.

On March 20, 1922, Honorable T. Bailey Lee, one of the judges of said district, postponed the opening of the Minidoka county term from March 20th to March 30th, and then from March 30th to April 5th. The Cassia county term appears to have been opened by Judge Lee on February 20th, and to have continued without question up to and including April 3, 1922, the date upon which the grand jury was impaneled which returned the indictments involved in this case. On April 5th, the grand jury having been impaneled and sworn and duly charged by the court, Judge Lee opened a term of court at Rupert, in Minidoka county, pursuant to the orders theretofore made by him. The term at Rupert proceeded in the usual way, cases being called and tried by him up to and including the 29th day of April. In the meantime the grand jury in Cassia county remained in session until the 23d day of April, 1922, when with all the members present, they voted to return the indictments involved in this proceeding. On April 26th, Emil J. Henzel one of the grand jurors, was excused by Judge Lee on

account of sickness and an order was made requiring the summoning of an additional grand juror. Pursuant to this order Alfred Crane was summoned, examined and sworn and made a member of the grand jury. No evidence of any kind was submitted to the grand jury after Crane became a member and it does not appear that he had any part in the returning of said indictments except probably to accompany the other members of the grand jury into court at the time said indictments were returned and filed. At the time Juror Henzel was excused and also at the time the said indictments were returned into court Judge Lee was present, but the record fails to disclose whether or not he was in Burley, the county seat of Cassia county, at any other time during the sittings of the grand jury.

No order was made by Judge Lee adjourning the term of the court in Cassia county, but it is the contention of petitioners that the necessary legal effect of his opening the term in Minidoka county was to adjourn the Cassia county term. If this contention of petitioners is correct then it is not open to question that the grand jury had no legal existence at the time of finding and returning these indictments. Following the provision of our statute regarding the impaneling and swearing of grand juries and the court's charge to them our statute provides:

"C. S., sec. 8784: The grand jury must then retire to a private room and inquire into the offenses cognizable by them. On the completion of the business before them, they must be discharged by the court, but, whether the business is completed or not, they are discharged by the final adjournment of the court."

It seems clear that Judge Lee had not only no intention to adjourn the term at Burley when he opened court at Rupert, but that his intention was not to adjourn it, but to take a recess while the grand jury were prosecuting their investigations. After the grand jury had been impaneled, sworn and charged by him as required by law the court had no duty laid upon him except to be ready to give advice in case it should be requested, or to receive a report from the grand

jury. The judge had no right to be present at the sessions
of the grand jury unless requested (C. S., sec. 8799), and
neither he nor the court could exercise any control over their
deliberations. They fixed the hours for their sessions, which
could not be controlled by the court, and the prosecuting
attorney, who was permitted by law to be present for the
examination of witnesses, was authorized to issue process
for such witnesses as the grand jury might wish to examine.
Notwithstanding the fact that Judge Lee was holding a term
of court in Rupert, the record does not show that he was not
daily in Burley, nor that if his presence had been requested
at any time while he was holding court in Rupert he could
not within an hour or less time have been in the presence of
the grand jury at Burley. While we think the practice of
having a grand jury in session in one county while the judge
is holding a term of court in another county, no matter how
near the county seats of such counties may be to each other,
is one to be disapproved and not under any circumstances to
be encouraged, we still fail to see any sound reason for hold-
ing that an indictment found under such circumstances must
be held invalid because of this fact alone, that the grand
jury was in session while the district judge was holding a
term of court in another county.

C. S., sec. 6458, reads as follows: "At least two terms of
the district court must be held in each county each year, and
each term must be held until business is disposed of. If a
judge of said court deems it necessary, in order to dispose
of business, to hold a term beyond the date set for the com-
mencement of another term in the same district, he may, by
order so do and postpone the other term to a future date.
When there is more than one judge in any district, or when
another judge is called into the district, any or all of said
judges may hold court at the same time in the same county
or may hold terms concurrently in the different counties of
the district."

While the plan of procedure outlined in this section was
the one undoubtedly intended by the legislature to be fol-
lowed in avoiding conflict between terms of court in two or

more counties, we do not interpret the provisions of this section as requiring us to hold that the term of court in Cassia county was terminated by operation of law by the opening of the term in Minidoka county. Prior to 1909 this section read as follows:

"R. C., sec. 3831 (C. S., sec. 6458). At least two terms of the district court must be held in each organized county of the state, and each term must be held until the business is disposed of, or until a day fixed for the commencement of some other term in the district."

Under this section as it was prior to amendment the contention of petitioners might be upheld, but as the section now stands we are unwilling to so hold, and our view in this respect is supported by ample authority as well as by sound reason.

C. S., sec. 6459 reads as follows: "The court may adjourn from time to time during the term, and may, when the public convenience requires, adjourn the term over the time fixed by law for the commencement of another term in the same district."

Under this section the court had authority to take a recess, as it appears to have done in this case, and such recess would not be equivalent to a final adjournment of the term. In support of this view the following authorities are in point: *Ex parte Harrell,* 57 Or. 95, 110 Pac. 493; *Tucker v. State,* 10 Okl. Cr. 565, 139 Pac. 998; 15 C. J. 881, 883.

This view is also supported by the following authorities: *Com. v. Bannon,* 97 Mass. 214; *Terr. v. Armijo,* 14 N. M. 205, 89 Pac. 267; *Terr. v. Barela,* 15 N. M. 520, 110 Pac. 845; *Brown v. State,* 11 Okl. Cr. App. 498, 148 Pac. 181; *Jones v. McClaughry,* 169 Iowa, 281, 151 N. W. 210; *Bidwell v. Love,* 22 Okl. 549, 98 Pac. 425; *Stirling v. Wagner,* 4 Wyo. 5, 31 Pac. 1032, 32 Pac. 1128; *Carland v. Custer County,* 5 Mont. 579, 6 Pac. 24–29; *People ex rel. Pickard v. Sheriff,* 11 N. Y. Civ. Proc. Rep. 172, 184; *Nealon v. People,* 39 Ill. App. 481; *Badders v. United States,* 240 U. S. 391, 36 Sup. Ct. 367, 60 L. ed. 706; *Jones v. United States,* 162 Fed. 417, 421, 89 C. C. A. 303.

It seems perfectly clear that under the facts presented in the petition the introduction of Alfred Crane as a member of the grand jury in place of Emil J. Henzel cannot be held to be fatal to the indictments. While a grand jury is required to consist of 16 persons under the law of this state (C. S., sec. 6514) and an indictment cannot be found without the concurrence of at least 12 grand jurors (C. S., sec. 8817), our statute clearly indicates that it was the intention of the legislature that the business of the grand jury might be carried on without the presence of the entire 16 members, otherwise there would be no reason for the provision of C. S., sec. 6546, that 12 of the grand jury shall constitute a quorum. It also clearly appears from section 8778 that under certain circumstances a grand jury may sit with less than 16 members present and return a valid indictment. In fact, the petitioners concede that after Mr. Henzel was excused the remaining 15 grand jurors could have returned valid indictments. This being undoubtedly true and these 15 men who had joined in finding the indictments still being a part of the grand jury, the question naturally arises: How did Mr. Crane's presence affect the validity of the indictments that had already been found by 16 grand jurors? Nothing is shown in the petition that ought to be held to invalidate the indictments and we can think of no sound reason for so holding. No question is raised as to the validity of the grand jury as impaneled and sworn on April 3d, and there can be no question that a smaller number than 16 could find and return a valid indictment provided the number of the grand jurors was not less than 12. (*People v. Roberts*, 6 Cal. 214; *People v. Butler*, 8 Cal. 435; *People v. Hunter*, 54 Cal. 65; *People v. Simmons*, 119 Cal. 1, 50 Pac. 844; *State v. Miller*, 3 Ala. 343; *Beasley v. People*, 89 Ill. 571; *State v. Brainerd*, 56 Vt. 532, 48 Am. Rep. 818; *State v. Conners*, 233 Mo. 348, Ann. Cas. 1912C, p. 28, and note, 135 S. W. 444; note, 27 L. R. A. 846; *Jones v. United States*, 162 Fed. 417, 421, 89 C. C. A. 303.)

The third point mentioned by petitioners is not discussed in the brief, from which we infer that it is not seriously

contended that the erroneous summoning of 25 good and lawful citizens instead of 20, as ordered by the court, to appear on April 2d, which was Sunday, instead of April 3d, the date fixed for their appearance by the court, is sufficient ground for setting aside the indictments. This at most was a mere irregularity, as stated in *State v. Roberts*, 33 Ida. 30, 188 Pac. 895, where this court said: "In general the mere irregularity in the procedure with regard to summoning of the grand jury by which an indictment is found is not ground for quashing it, unless prejudice has been shown to have been occasioned to the substantial rights of the defendant, . . . . "

It is not necessary to determine whether the fourth point can be sustained since, if prohibition is the proper remedy, petitioners have not brought themselves within the statute providing for this writ.

The peremptory writ applied for is denied and the alternative writ is quashed.

Rice, C. J., and McCarthy, J., concur.

Budge, J., being disqualified, took no part.

Lee, J., dissents.